DECISION
Defendant-appellant, Meredith Hill aka Abdullah Nadhir Mohammad, appeals from a judgment of the Franklin County Court of Common Pleas finding him to be a sexual predator pursuant to R.C. Chapter 2950. Because the trial court's determination that defendant is a sexual predator is supported by clear and convincing evidence in the record, we affirm.
By indictment filed February 11, 1988, defendant was charged with three counts of aggravated murder with a specification, one count of aggravated robbery, one count of aggravated burglary, and one count of felonious sexual penetration in the robbery and murder of Ann Chatfield on February 5, 1988. Prior to trial, the trial court granted defendant's motion to dismiss one count of aggravated murder; a jury found defendant guilty on all remaining counts. The trial court sentenced defendant to 30 years to life on the two merged aggravated murder counts, and not less than ten nor more than 25 years on each of the three remaining counts, with Counts 3 and 4 to be concurrent with each other, but consecutive to the merged murder counts, and Count 5 consecutive to Counts 1, 2, 3, and 4.
In April 1997, the Ohio Department of Rehabilitation and Correction ("ODRC") recommended, under former R.C. 2950.09(C)(1), that the trial court adjudicate defendant a sexual predator. A sexual classification hearing was held before the Franklin County Court of Common Pleas on August 2, 2001. By decision filed August 20, 2001, and judgment entry filed October 3, 2001, the trial court determined defendant is a sexual predator by clear and convincing evidence. Defendant appeals, assigning the following errors:
FIRST ASSIGNMENT OF ERROR:
 THE TRIAL COURT'S DECISION FINDING APPELLANT TO BE A "SEXUAL PREDATOR" AS DEFINED BY 2950.01(E) IS CONTRARY TO THE WEIGHT OF THE EVIDENCE.
SECOND ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED IN APPLYING R.C. 2950.09(B) BECAUSE THE STATUTE, AS APPLIED TO THOSE CONVICTED OF OFFENSES COMMITTED BEFORE ITS EFFECTIVE DATE OF JANUARY 1, 1997, BUT SENTENCED AFTER JANUARY 1ST, VIOLATES THE BAN ON EX POST FACTO LAWMAKING BY THE STATES SET FORTH IN ARTICLE I, SECTION 10 OF THE UNITED STATES CONSTITUTION.
THIRD ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED IN LABELING APPELLANT A SEXUAL PREDATOR BECAUSE CHAPTER 2950 OF THE OHIO REVISED CODE VIOLATES THE EQUAL PROTECTION CLAUSE TO THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
FOURTH ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED IN LABELING APPELLANT A SEXUAL PREDATOR BECAUSE HOUSE BILL 180, AS APPLIED TO APPELLANT, CONSTITUTES DOUBLE JEOPARDY IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
Sexual predator determinations have been held to be civil in nature. See State v. Newton (1998), Franklin App. No. 97APA10-1353. The standard for assessing the manifest weight of the evidence in a civil case is whether the judgment is "supported by competent, credible evidence going to all the essential elements of the case." C. E. Morris Co. v. Foley Const. Co. (1978), 54 Ohio St.2d 279.
When presented with a manifest weight argument in a criminal case, we engage in a limited weighing of the evidence to determine whether the judgment is supported by sufficient competent, credible evidence to permit reasonable minds to so conclude. State v. Thompkins (1997),78 Ohio St.3d 380, 387; State v. Conley (1993), Franklin App. No. 93AP-387. In either the civil or the criminal analysis, determinations of credibility and weight of the testimony remain within the province of the trier of fact. See, e.g., State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Whether we apply the civil or criminal test for assessing the manifest weight of the evidence, the result here is the same.
At the hearing, the state, by stipulation, introduced certified copies of defendant's 1988 indictment, the jury verdicts finding defendant guilty on the five counts presented to the jury, the trial court's sentencing entry, a partial trial transcript of defendant's testimony, and a partial trial transcript of the testimony of John O'Donovan, who accompanied defendant to the victim's home on the night of the murder. The state also submitted records from the ODRC, including a post-sentence investigation and an institutional summary report. The institutional summary report listed various programs defendant completed in prison, including programs for cultural diversity, learning from adversity and defeat, grass roots violence prevention, blood and body fluid, and cultural awareness. In addition, the state submitted not only the testimony of Jeffrey Allen, who had served as co-counsel in defendant's aggravated murder trial, but also the photographs admitted as exhibits in that trial. Lastly, the prosecution called defendant as a witness; defendant continued to deny involvement in the Chatfield murder, and admitted he had refused sex offender counseling in prison.
The assistant prosecutor succinctly testified to the underlying facts in the Chatfield homicide:
 [T]he defendant, Mr. Hill, now known as Mr. Mohammad, and a young associate by the name of John Donovan, left the home where Mr. Hill was staying in the neighborhood of Ann Chatfield. They proceeded over to Ann Chatfield's house at night. Mr. Hill pulled down a light which was outside her residence, cut the phone wires with a knife that he took with him, proceeded to kick down the door. * * * He struck her, stabbed her, causing her death and left the butcher knife that he took with him — inserted it up — the handle in her vagina. (Tr. 9-10.)
The photographs and other documents submitted in the sexual predator hearing clearly depict that defendant inserted the entirety of an 11 1/2 inch butcher knife blade into the victim's vaginal cavity.
On behalf of defendant, defense counsel presented certificates of the various programs defendant had completed in prison, and further conducted a direct examination of defendant. Defendant explained that he did not attend the sex offender class in prison because he is not a sex offender.
After considering the evidence and the statutory factors in former R.C. 2950.09(B)(2), the trial court found the state had met its burden of proving by clear and convincing evidence that defendant is a sexual predator. Specifically, the court noted defendant committed an act of torture and unusual cruelty in inserting a butcher knife into the victim's vaginal cavity, defendant preyed on a 72 year old woman who was least able to protect herself, and defendant took deliberate steps to effectuate the crime.
In order for defendant to be designated a sexual predator, the state was required to prove by clear and convincing evidence that defendant had been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses. Former R.C. 2950.01(E) and former 2950.09(B)(3); State v. Eppinger (2001), 91 Ohio St.3d 158, 163. Defendant does not dispute that a sexually oriented offense is involved in this case. Rather, defendant contends no evidence was presented that defendant is likely to commit other sexually oriented offenses, and the evidence was therefore insufficient to establish that defendant is a sexual predator.
The issue then resolves to whether the evidence clearly and convincingly demonstrates that, as an offender who had been convicted of committing one sexually oriented offense in 1988, defendant is likely to re-offend. Former R.C. 2950.01(E) and former 2950.09(B)(3). "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases." Eppinger at 164, quoting Cross v. Ledford (1954), 161 Ohio St. 469, 477. "A reviewing court should not re-weigh the evidence and should affirm the judgment of the trial court when the record contains competent, credible evidence that goes to all the essential elements of the case." State v. Dunn (1998), Pickaway App. No. 97CA26, citing Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
The purpose of R.C. Chapter 2950 is to protect the safety and general welfare of the people of this state. Former R.C. 2950.02(B); Eppinger at 165. Former R.C. 2950.09(B)(2) required the trial court to consider all relevant factors in making a sexual predator determination, including those enumerated in the statute. Id. at 166; State v. Maser (1999), Franklin App. No. 98AP-689. However, no requisite number of factors must be applicable before finding a defendant to be a sexual predator, and the trial court may place as much or as little weight on any of the factors as it deems to be relevant. State v. Austin (2000), Franklin App. No. 00AP-184; Maser, supra. Even one or two statutory factors will suffice as long as the evidence of likely recidivism is clear and convincing. State v. Hardie (2001), 141 Ohio App.3d 1, 5.
Although in defining a sexual predator former R.C. 2950.01(E) looked toward a defendant's propensity to engage in future behavior, the court can look at past behavior because past behavior is often an important indicator of future propensity. State v. Pennington (2002), Franklin App. No. 01AP-657, appeal not allowed, 95 Ohio St.3d 1460. Indeed, the Ohio Supreme Court in Eppinger recognized that "under certain circumstances, it is possible that one sexually oriented conviction alone can support a sexual predator adjudication." Id. at 167; State v. Ray (2001), Franklin App. No. 00AP-1122. See State v. Henson (2000), Franklin App. No. 99AP-553, appeal not allowed, 89 Ohio St.3d 1454; Dunn, supra. First time sexual offenders with no previous criminal record have been held to be sexual predators. See State v. DeGroat (2001), Franklin App. No. 00AP-1485; State v. Chandler (1999), Cuyahoga App. No. 72310. "R.C. Chapter 2950 does not specifically require that the state prove propensity by facts `other than the facts of the crime itself.'" State v. King (2000), Franklin App. No. 99AP-597; see, also, State v. Queary (2001), Montgomery App. No. 18300; State v. Carter (2001), Franklin App. No. 00AP-1365; Henson, supra.
Here, defendant admittedly was living a lifestyle that included substance abuse and escorting female prostitutes, and he was in need of money. At the time of the offense, defendant was is his early 30s. See former R.C. 2950.09(B)(2)(a). He should have reached a maturity to know the wrongfulness of his conduct. The victim was an elderly woman of 72 years. See former R.C. 2950.09(B)(2)(c). She was particularly vulnerable to defendant and incapable of adequately protecting herself. Indeed, defendant was strong enough to kick in the door to gain entrance to the victim's home.
While defendant did not have prior sexually oriented offenses, he had a prior criminal record, including a breaking and entering, as well as a receiving stolen property in Toledo, Ohio in 1974, an assault and obstructing official police business in Franklin County in 1986, and various driving violations, including two convictions for operating a motor vehicle while under the influence of alcohol or other drugs of abuse. See former R.C. 2950.09(B)(2)(b).
The most telling factor in this case, however, is the cruelty defendant displayed. See former R.C. 2950.09(B)(2)(i). As the prison summary indicates, defendant told O'Donovan he knew where "an old lady" lived, and he was going to go to her house to rob her. He requested that O'Donovan accompany him, and O'Donovan agreed. Defendant then removed an 11 1/2 inch butcher knife from the kitchen where he was staying, and both individuals left for the victim's home. They arrived at 3:45 in the morning, where defendant tore down a light, cut the telephone wires, and kicked in the front door. The victim shouted, and defendant hit the victim in the face with his fist. She fell to the floor. Defendant chased the victim from her living room, down the hallway to the bedroom. He threw her on the bed and began to ransack the dresser drawers in the room, looking for money. The victim escaped from the bedroom and ran down the hall to a spare bedroom. Defendant chased her and stabbed her. She was found with the butcher knife inserted into her vaginal cavity up to the handle of the knife. The cruelty defendant displayed properly weighed heavily in the trial court's determination.
Moreover, while defendant did not display a pattern of abuse with other victims, see former R.C. 2950.09(B)(2)(h), he displayed a pattern of abuse with respect to Ann Chatfield, ultimately culminating in her death and the felonious sexual penetration for which defendant was convicted. Despite the conviction, defendant continues to deny his involvement in any of the crimes, and, as a result, has refused to participate in any sex offender programs. See former R.C. 2950.09(B)(2)(f). The nature of defendant's conduct, the force and cruelty he displayed in the underlying offense, and defendant's continued denial support a finding that defendant is a sexual predator. See State v. Belton (2002), Franklin App. No. 01AP-980; State v. Hendricks (2001), Franklin App. No. 00AP-1374.
Although defendant's participation in various programs in prison is commendable, it does not necessarily indicate defendant's ability to refrain from recidivism upon release from prison. See Hendricks, supra; State v. Ray (2001), Franklin App. No. 00AP-1122; State v. Jones (2000), Franklin App. No. 99AP-902. Such a conclusion is especially true where, at the time the sexual offender classification hearing was held, defendant had so many years remaining on his sentence before possible release from prison.
Because the age of the victim, defendant's age, defendant's continuing denial, and the cruelty defendant displayed, coupled with his refusal to participate in a sex offender program, support the trial court's determination by clear and convincing evidence, we overrule defendant's first assignment of error.
Defendant's second, third, and fourth assignments of error assert the trial court erred in applying former R.C. 2950.09(B), because the statute violates the ban on ex post facto lawmaking under the United States Constitution, violates the Equal Protection Clause of theFourteenth Amendment to the United States Constitution, and constitutes Double Jeopardy in violation of the Fifth and Fourteenth Amendments to the United States Constitution. Defendant's second, third, and fourth assignments of error are overruled pursuant to the Ohio Supreme Court's decisions in State v. Cook (1998), 83 Ohio St.3d 404, certiorari denied (1999), 525 U.S. 1182, 119 S.Ct. 1122, and State v. Williams (2000),88 Ohio St.3d 513, certiorari denied, Suffecool v. Ohio (2000),531 U.S. 902, 121 S.Ct. 241.
Having overruled defendant's four assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
BOWMAN and KLATT, JJ., concur.